LEVY DAVIS & MAHER, LLP
Attorneys for Plaintiff
Jonathan A. Bernstein (JB 4053)
39 Broadway, Suite 1620
New York, New York 10006
(212) 371-0033

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AHNA BLUTREICH,                                    :
                                                   :   13 Civ. 8583 (DAB)
                             Plaintiff,            :
                                                   :
          - against -                              :   **COMPLAINT AND**
                                                   :   **DEMAND FOR JURY TRIAL**
NORTH SHORE-LONG ISLAND JEWISH                     :
HEALTH SYSTEM, INC., and WILLIAM                   :
RODGERS,                                           :
                                                   :
                             Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

  Plaintiff Ahna Blutreich (hereinafter "Blutreich"), by her attorneys, Levy Davis & Maher, LLP, complaining of defendants North Shore-Long Island Jewish Health System, Inc. (hereinafter "NSLIJHS") and William Rodgers, M.D. (hereinafter "Dr. Rodgers") alleges:

### NATURE OF THE ACTION

  1. This is a civil rights action to redress the deprivation of rights accorded to plaintiff Blutreich pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Civil Rights Act of 1991, 42 U.S.C. § 1981A ("1991 CRA"); Title 8 of the Administrative Code of the City of New York, N.Y.C. Admin. Code § 8-101 *et seq.* ("Title 8" or "NYCHRL") and the common law of the State of New York.

  2. Dr. Blutreich was a pathologist at Lenox Hill Pathology, a captive pathology

practice at Lenox Hill Hospital. She was subjected to a course of sexual harassment by Dr. Rodgers, her employer/supervisor. Dr. Blutreich, through counsel, negotiated a settlement agreement with Lenox Hill, which was then in the process of being acquired by NSLIJHS. The agreement called for the NSLIJHS to give a prescribed response to persons seeking references for Dr. Blutriech.

3. Dr. Rodgers's initial reference flouted both the letter and the spirit of the agreement. Statements by other physicians and administrators at Lenox Hill also departed from the agreed terms. NSLIJHS repeatedly ratified that conduct, which, upon information and belief, resulted in Dr. Blutreich's loss of multiple career opportunities. That is, Dr. Blutreich having sought to vindicate her civil rights, defendants retaliated therefor by providing false, inaccurate and/or misleading information to Dr. Blutreich's prospective employers, breaching a duly negotiated contract with her and interfering with her prospective business relations.

4. Defendant's actions are unlawful, and Dr. Blutreich brings this action seeking injunctive and declaratory relief, compensatory and punitive damages and other appropriate equitable and legal relief as may be necessary to compensate her.

## JURISDICTION AND VENUE

5. This court has jurisdiction of this matter pursuant to (I) 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; (ii) the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) 42 U.S.C. § 2000e *et seq.* and (iv) 28 U.S.C. § 1367(a), in that the state and federal claims arise from a common nucleus of

operative fact such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), inasmuch as the unlawful employment practices complained of herein occurred within the Southern District of New York. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as the defendant has offices, conducts business and can be found in the Southern District of New York, and the causes of action arose and occurred in the Southern District of New York.

**PARTIES**

7. Plaintiff Ahna Blutreich, M.D. is a natural person who resides in the City, County and State of New York. She was employed by Lenox Hill Pathology, P.C., Lenox Hill Hospital and/or NSLIJHS from on or about July 2010 to on or about April 2012.

8. NSLIJHS is, upon information and belief, a domestic not for profit corporation, with a principal place of business in the Village of Great Neck, Town of North Hempstead, County of Nassau, State of New York. It owns and operates Lenox Hill Hospital in the City, County and State of New York. At all relevant times, it was an "employer" within the meaning of Title VII and the NYHRL.

9. William Rodgers, M.D., is a natural person who, upon information and belief, resides in the City, County and State of New York.

**PROCEDURAL REQUIREMENTS**

10. Plaintiff incorporates by reference Paragraphs 1 through 9 of this Complaint as though the same were set forth fully herein.

11. Dr. Blutreich timely filed a Charge of Discrimination on or about March 6, 2013, with the United States Equal Employment Opportunity Commission ("EEOC"). This Complaint will be amended at such time as the EEOC issues a Notice of Right to Sue.

12. Plaintiff has satisfied the filing requirements of Title 8 of the Administrative Code of the City of New York.

**STATEMENT OF THE CLAIM**

13. Plaintiff incorporates by reference Paragraphs 1 through 12 of this Complaint as though the same were set forth fully herein.

14. Dr. Blutreich was a pathologist at Lenox Hill Hospital from July 2010 to April 2012. Specifically, she worked for William Rodgers, M.D. Dr. Rodgers was the head of Lenox Hill Pathology, P.C., which was a "captive" practice of the Hospital. In approximately October 2011, she became an employee of Lenox Hill.

15. From virtually the beginning of Dr. Blutreich's employment with him, Dr. Rodgers sexually harassed her. The harassment became progressively more severe until finally, in early 2012, she asked Dr. Rodgers to stop. She was then fired without cause. Her attorney then contacted Lenox Hill and negotiated an out-of-court settlement that confirmed that her employment had ended.

16. At the time, Lenox Hill was in the process of becoming acquired by NSLIJHS.

Ultimately, an Agreement and General Release ("Agreement") was signed by both Lenox Hill and NSLIJHS. The Agreement was signed in July 2012. The terms of the Agreement are confidential. However, actions to enforce the agreement are excepted from confidentiality provision thereof.

17. The Agreement provides that no party will engage in any conduct that is injurious to the other's reputation or interest or disparage the other. The Agreement also provides that, in response to requests for references concerning Dr. Blutreich, the Employer shall state that

> As a result of Lenox Hill Hospital's merger with North Shore - Long Island Jewish Health System and the closure of Lenox Hill Pathology, P.C. (the P.C."), a review of current staffing levels led to the decision not to renew Dr. Blutreich's contract with the Employer. ... So long as any requests for non-credentialing inquiries and/or requests for references are directed to the attention of Glenn Courounis, Vice President, Human Resources, Lenox Hill Hospital, Employer will provide a neutral reference for Employee, including only Employee's position, dates of employment and, if requested in writing, last salary.

18. In the months following her departure from NSLIJHS, Dr. Blutreich applied to work at dozens of hospitals as well as the U.S. Air Force medical service and locum tenens (temporary physician placement) providers.

19. Approximately a dozen times, she went through the interview process and was offered employment subject to a reference check, only to have the prospective employer suddenly break off contact. In fact, the Air Force had told Dr. Blutreich that it was creating a position for her.

20. Prior to her employment at Lenox Hill/NSLIJHS, Dr. Blutreich had always received good references from employers. In fact, in February 2012, NSLIJHS itself, which is

well known to be a top-quality hospital and highly selective about its employees, extended her an offer of employment for two years.

21. Since there was no other explanation for the withdrawn offers of employment, Dr. Blutreich had little choice but to engage a reference-checking service. Unfortunately, the reference checker confirmed her suspicion that NSLIJHS and Dr. Rodgers had provided false references to prospective employers:

a. On or about November 15, 2012, a reference checker phoned Dr. Rodgers, who stated, in essence, that Dr. Blutreich is the kind of "problem" employee who sues her employer:

> I can tell you that she left in good standing however due to a non-disclosure agreement related to a settlement agreement regarding her departure I am not in a position to comment. Our legal counsel has advised us not discuss her employment at Lenox Hill Hospital in any way. I can also tell you that Dr. Blutreich should be directing any employment related inquiries to our Personnel Department – which was not at our request, but rather at the specific request of her attorneys. I'm sorry, I'm not in a position to help you more, but I cannot comment further.

b. Also on or about November 15, 2012, the reference checker spoke to Dr. Samuel Wahl, then the Director (now, upon information and belief, the Acting Chairman) of Surgical Pathology at Lenox Hill. Dr. Wahl stated that

> there were some personality issues I think and as a result her interpersonal skills deteriorated over time ... I would recommend her, but only if she had an understanding colleague ... our chairman elected not to renew her contract.

Dr. Wahl also rated Dr. Blutreich's professionalism and personal qualities on a

      scale of 1 (low) to 5 (high). He gave her a 2 on "ability to handle conflict," and 3s on "ability to be fair and objective," "relationship building" and "overall performance."

    c.    That same day, the reference checker spoke to Elana Opher, M.D., Director of the Lenox Hill Cytology Department. Dr. Opher gave Dr. Blutreich a 2 in "interpersonal skills."

    d.    Dr. Blutreich learned in January 2013 that licensing coordinators of two locum tenens (temporary medical staffing) companies, CompHealth and Weatherby Locums, had been trying without success since November 1, 2012, to credential her in order to send her on temporary assignments to work as a pathologist throughout the country. NSLIJHS delayed sending out the credentialing paperwork from November 1 until January 24. This delay hindered Dr. Blutreich from obtaining employment. Locum tenens/temporary positions are time-sensitive and delays of this kind mean that the positions are no longer available. These credentials verifications normally take approximately two to four weeks.

22.    The hospitals and other employers at which Dr. Blutreich interviewed during this period include:

    a.    St. Barnabas Medical Center, NJ;
    b.    University Pathologists, Rhode Island;
    c.    U.S. Air Force;
    d.    CompHealth;
    e.    Weatherby Locums;
    f.    Plantation Hospital, Florida
    g.    Harlem Hospital;
    h.    The Medical Affairs Company (TMAC)/Pfizer;
    i.    New York Hospital of Queens;

      j.        Summit Medical Group/Morristown Pathology;
      k.        CDx Diagnostics and
      l.        Beth Israel Medical Center, Pathology Department.

23.    Each of the hospitals and employers named above appeared eager to hire Dr. Blutreich subject to a reference or credential check, only to lose interest.

24.    On or about January 23, 2013, Dr. Blutreich, through counsel, contacted defendants in an unsuccessful attempt to seek relief for the foregoing. On or about March 6, 2013, she filed a charge of discrimination at the EEOC.

25.    On or about April 15, 2013, in response to an inquiry from Sterling Information Systems (which was conducting a background check for a position at TMAC/Pfizer), NSLIJHS reported that Dr. Blutreich was an Assistant Pathologist at Lenox Hill from 12/18/2011 until 4/19/2012. In fact, and as she had reported to Sterling Information Systems, Dr. Blutreich was employed as an Associate Pathologist from July 2010 until April 2012. NSLIJHS's report gives the impression that Dr. Blutreich had grossly misrepresented her credentials (a pathologist assistant is a physician's assistant and holds a four-year undergraduate degree, whereas Dr. Blutreich has completed four years of college, four years of medical school, four years of residency training, two years of fellowship training and is board-certified in Anatomic and Clinical Pathology). NSLIJ also failed to provide salary information to Sterling Information Systems, as provided in the Separation Agreement. In summary, NSLIJ misrepresented Dr. Blutreich's title and credentials, misrepresented her duration of employment, failed to disclose her starting and ending salary and the reason for her separation from NSLIJ, as was specified in the Separation Agreement. Consequently, upon information and belief, an unknown number of hospitals and corporations regard Dr. Blutreich as a physician's assistant posing as a medical

doctor.

26. Following multiple requests by potential employers for credentialing verification, Dr. Blutreich discovered that Glenn Courounis had left Lenox Hill's employment. Approximately two months later, NSLIJHS identified Emily Weisenbach as the Human Resources official responsible for references. However, NSLIJHS failed for five weeks to inform Dr. Blutreich that Ms. Weisenbach had departed on maternity leave. During this time, upon information and belief, requests for references were directed to a person(s) unaware of the applicable requirements of the Agreement. Companies and hospitals requesting references were referred by the Human Resources department at NSLIJ to an automated phone service which required payment in order to receive information on Dr. Blutreich. This automated phone service did not provide salary information or the reason for her separation from employment.

27. NSLIJ repeatedly ratified the retaliation and/or breach of contract detailed in this Complaint. At every juncture, when the plaintiff discovered issues related to receiving references from NSLIJ, Dr. Blutreich's counsel repeatedly contacted NSLIJ's counsel to remedy the situation, as Dr. Blutreich was continually losing employment opportunities. However, NSLIJ failed and refused to remedy this situation.

28. Defendants' actions were intentional and in reckless disregard of the health and well being of the plaintiff. As a result of these acts, the plaintiff has suffered grievous, extensive and continuing damages, including, but not limited to, pain and suffering, humiliation and embarrassment, lost wages and benefits.

## COUNT I

29. Plaintiff incorporates by reference Paragraphs 1 through 28 of this Complaint as though the same were set forth fully herein.

30. NSLIJHS retaliated against plaintiff in violation of Title VII.

## COUNT II

31. Plaintiff incorporates by reference Paragraphs 1 through 30 of this Complaint as though the same were set forth fully herein.

32. NSLIJHS retaliated against plaintiff in violation of the New York City Human Rights Law.

33. Dr. Rodgers aided and abetted NSLIJHS's retaliation, and accordingly retaliated against plaintiff in violation of the New York City Human Rights Law.

## COUNT III

34. Plaintiff incorporates by reference Paragraphs 1 through 33 of this Complaint as though the same were set forth fully herein.

35. NSLIJHS is liable for breach of contract.

## COUNT IV

36. Plaintiff incorporates by reference Paragraphs 1 through 35 of this Complaint as though the same were set forth fully herein.

37. Defendants acted for the sole purpose of harming Dr. Blutreich and/or used

dishonest, unfair or improper means.

38. Defendants are accordingly liable for tortious interference with prospective economic advantage.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court grant the following relief:

A. Declare NSLIJHS's conduct complained of herein to be in violation of the plaintiff's rights as secured by Title VII, Title 8 and the common law of New York;

B. Declare William Rodgers' conduct complained of herein to be in violation of the plaintiff's rights as secured by Title 8 and the common law of New York;

C. Grant a permanent injunction enjoining NSLIJHS and its officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert therewith from any conduct violating the rights of the plaintiff as secured by Title VII, Title 8 and the common law of New York;

D. Grant a permanent injunction enjoining William Rodgers from any conduct violating the rights of the plaintiff as secured by Title 8 and the common law of New York;

E. Order defendants to make the plaintiff whole by providing appropriate lost earnings and benefits, with pre-judgment interest, and other affirmative relief including, but not limited to, front pay;

F. Award the plaintiff compensatory damages to be determined by the jury at the time of trial;

G.  Award the plaintiff punitive damages to be determined by the jury at the time of trial;

H.  Award the plaintiff reasonable attorneys' fees and costs, including the fees and costs of experts, incurred in prosecuting this action;  and

I.  Grant such further relief as the Court deems necessary and proper.

## JURY TRIAL DEMANDED

The Plaintiff requests a jury trial on all questions of fact raised by the Complaint.

Dated: New York, New York
December 2, 2013

Respectfully submitted,

LEVY DAVIS & MAHER, LLP

By: _____/s/_____

Jonathan A. Bernstein (JB 4053)
Attorneys for Plaintiff
39 Broadway, Suite 1620
New York, New York 10006
(212) 371-0033